# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| PATTON BOGGS, LLP, |
| Plaintiff, |
| v. |
| CHEVRON CORPORATION, |
| Defendant. |

Civil Action 10-01975 (HHK)

## MEMORANDUM OPINION

The law firm of Patton Boggs, LLP brings this action against Chevron Corporation, seeking a declaratory judgment that Patton Boggs's representation of parties adverse to Chevron in other courts does not violate standards of professional conduct such that it could be disqualified from participating in those cases. Patton Boggs also seeks leave to amend its complaint to add claims of tortious interference and civil conspiracy against Chevron and Chevron's counsel, Gibson, Dunn & Crutcher, LLP.[1] Before the Court are: Patton Boggs's motion for leave to amend [#19]; Chevron's motion to dismiss this action [#5]; and Patton Boggs's cross-motion to strike Chevron's motion to dismiss [#12]. Upon consideration of the motions, the oppositions thereto, and the record of this case, the Court concludes that Patton Boggs's motions must be denied and Chevron's motion to dismiss must be granted.

---

[1] All of the claims in Patton Boggs's original and proposed amended complaints are predicated on this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

# I. BACKGROUND

This action constitutes the latest chapter in a sprawling dispute between Chevron and various parties in Ecuador regarding the operations of an oil consortium that allegedly caused extensive environmental damage in the Ecuadorian Amazon. Chevron inherited this dispute in 2001 via a merger with Texaco. Texaco was originally sued in the U.S. District Court for the Southern District of New York, but that action was dismissed, at the urging of both Texaco and the government of Ecuador, on forum non conveniens grounds. *See Aguinda v. Texaco, Inc.*, 303 F.3d 470 (2d Cir. 2002). Subsequently, 48 Ecuadorian plaintiffs sued Chevron in Lago Agrio, Ecuador. On February 14, 2011, the Lago Agrio court issued a multi-billion dollar judgment against Chevron. *See Chevron Corp. v. Steven Donziger*, No. 11-0691, slip op. at 52–53 (S.D.N.Y. March 7, 2011). Chevron asserts that the proceedings in Ecuador were tainted by misconduct and lacked basic due process protections; whether that is true is beyond the scope of this action. What is of significance here is that, to aid in its defense of the Lago Agrio litigation, Chevron instituted proceedings in multiple federal courts under 28 U.S.C. § 1782, which authorizes district courts to issue orders permitting discovery for use in foreign proceedings. *See* Compl. ¶¶ 2, 19.

Chevron also retained the Breaux Lott Leadership Group ("Breaux Lott Group"), a consulting and lobbying organization headed by former U.S. Senators John Breaux and Trent Lott, to assist with the Lago Agrio dispute. Compl. ¶ 25. The Breaux Lott Group represented Chevron from February 2008 to July 2010. In July 2010, Patton Boggs acquired the Breaux Lott Group. Compl. ¶ 30. It subsequently asked Chevron to waive a potential conflict of interest

arising from Patton Boggs's representation of the government of Ecuador.  Chevron refused and terminated its relationship with the Breaux Lott Group.

In November 2010, Patton Boggs entered an appearance on behalf of the Lago Agrio plaintiffs before the U.S. Court of Appeals for the Second Circuit.  *See In re Chevron Corp.*, No. 10-4341 (2d. Cir. Nov. 11, 2010) (notice of appearance).  This prompted Chevron to write to Patton Boggs via its counsel, expressing "grave concerns that [Patton Boggs's] appearance in this matter constitutes a conflict of interest that could result in disqualification," reserving "the right to take any action we deem appropriate," and requesting a response by November 16, 2010.  Def.'s Mot. to Dismiss Ex. A (letter from Randy M. Mastro to James E. Tyrrell, Jr. (Nov. 13, 2010)) at 1–2.  Patton Boggs replied that it had reviewed the situation and concluded that its withdrawal was not required.  *See* Def.'s Mot. to Dismiss Ex. C (letter from James E. Tyrrell, Jr. to Randy M. Mastro (Nov. 17, 2010)).  Patton Boggs subsequently entered appearances on behalf of the Lago Agrio plaintiffs in several more of Chevron's § 1782 actions.

Patton Boggs filed this action on November 17, 2010, seeking a declaratory judgment that "the Breaux Lott Leadership Group's prior non-legal work for Chevron does not provide a basis for disqualifying Patton Boggs from representing the Ecuadorian Plaintiffs."  Compl. at 10 (prayer for relief).  Chevron then moved to dismiss this case on multiple grounds.  Patton Boggs responded by moving to strike Chevron's motion to dismiss and requesting leave to amend its complaint to include claims of tortious interference and civil conspiracy against both Chevron and Gibson Dunn.

## II. ANALYSIS

### A. Patton Boggs's Motion for Leave to Amend the Complaint

The Court first addresses Patton Boggs's motion for leave to amend its complaint. Patton Boggs seeks to add three new claims, all of which would apply to both Chevron and Gibson Dunn: (1) tortious interference with a contract; (2) tortious interference with an attorney-client relationship; and (3) civil conspiracy. These claims are based on what Patton Boggs terms a "smear campaign designed to hamper Patton Boggs' ability to represent its clients in accordance with Patton Boggs' contractual and ethical duties." Pl.'s Mot. for Leave to Amend at 3.

A party seeking to amend its complaint more than once or after a certain period of time may do so only by written consent of the adverse party or by leave of the court. FED. R. CIV. P. 15(a). Because leave is to be freely given when justice so requires, *see id.*, a refusal to allow amendment must be justified by a sufficiently compelling reason, such as undue delay, prejudice to the non-moving party, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, or futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). The party opposing amendment has the burden of establishing that it would be improper. *Nwachukwu v. Karl*, 222 F.R.D. 208, 211 (D.D.C. 2004).

Here, Chevron opposes Patton Boggs's request on the ground that amendment would be futile because Patton Boggs's new claims would not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215 (D.C. Cir. 2010). Accordingly, the Court will address each count in the amended complaint

to determine whether it would survive a Rule 12(b)(6) motion to dismiss, *i.e.*, whether it states a claim upon which relief may be granted. *See id.* at 215–16.[2] Because both parties assume that District of Columbia law would govern Patton Boggs's new claims, the Court will do likewise. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir. 1991) ("[C]ourts need not address choice of law questions *sua sponte*."); *Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d 60, 65 (D.D.C. 2009) (where all parties assume that D.C. law applies, "[t]he Court need not and does not question the parties' assumptions on that point"); *accord Carranza v. Fraas*, 2011 WL 380164, at *7 n.5 (D.D.C. Feb. 7, 2011).

1. **Tortious Interference with Contract**

Patton Boggs's first new claim asserts that Chevron and Gibson Dunn have tortiously interfered with a contract — namely, the contract between Patton Boggs and the Ecuadorian plaintiffs in the Lago Agrio litigation. *See* Am. Compl. ¶¶ 68–79. Patton Boggs alleges that Chevron and Gibson Dunn have done so by "engag[ing] in improper offensive tactics aimed at forcing Patton Boggs to breach its contact with the Ecuadorian Plaintiffs with the ultimate aim to deprive the Ecuadorian Plaintiffs of counsel." Am. Compl. ¶ 75. The tactics in question allegedly include intimidating witnesses, Am. Compl. ¶ 24, "burying" the Lago Agrio plaintiffs'

---

[2] To survive a motion to dismiss under Rule 12(b)(6), a complaint does not need detailed factual allegations. It must, however, recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, —U.S.—, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557). At bottom, a complaint must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

counsel "beneath a mountain of discovery requests," Am. Compl. ¶ 26, publicly asserting that the Lago Agrio litigation is fraudulent, Am. Compl. ¶¶ 27, 36, and threatening to seek Patton Boggs's disqualification from Chevron's various § 1782 actions. Am. Compl. ¶ 33. Chevron argues that the amended complaint fails to allege facts establishing a plausible claim to relief for tortious interference. Chevron is correct.

Under D.C. law, a successful tortious interference claim requires: the existence of a contract; knowledge of the contract by the defendant; the defendant's intentional procurement of the contract's breach; and damages resulting from that breach. *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 325 (D.C. 2008).[3] Chevron points out that Patton Boggs' proposed complaint alleges not that such a breach has actually occurred (or that damages resulted), but rather that Chevron and Gibson Dunn's conduct is "*aimed at* forcing Patton Boggs to breach its contract." Am. Compl. ¶ 75 (emphasis added). Chevron thus argues that Patton Boggs has not stated a claim for tortious interference.

Patton Boggs responds that it has alleged that Chevron and Gibson Dunn "have *as their goal* the 'intentional procurement' of the breach of" Patton Boggs's contract with the Lago Agrio plaintiffs, which, Patton Boggs avers, is sufficient to state a claim of tortious interference. Pl.'s Reply to Def.'s Opp'n to Mot. for Leave to Amend [#23] at 12 (emphasis added). But Patton

---

[3] Patton Boggs points out that some federal decisions have characterized the third element as "intentional interference without justification." *See, e.g.*, *Jones v. Meridian Towers Apartments, Inc.*, 816 F. Supp. 762, 769 (D.D.C. 1993). That formulation, however, appears to impose a lower bar than do more recent decisions by the District's own highest court. *See Murray*, 953 A.2d at 325. Accordingly, this Court will not employ it. *See Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co.*, 944 F.2d 940, 944 (D.C. Cir. 1991) (federal courts sitting in diversity must determine how the highest court of the state would decide the question before them).

Boggs misunderstands the law. "Unlike in some jurisdictions, courts in the District of Columbia have held that a breach of contract is an essential element of" a tortious interference claim. *Murray*, 953 A.2d at 326 (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1266 (D.C. Cir. 1995)) (internal quotation marks omitted). Because Patton Boggs does not allege any facts suggesting that such a breach has occurred, the Court cannot "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Accordingly, Patton Boggs has failed to state a tortious interference claim, and amendment to add this claim would be futile. *See Murray*, 953 A.2d at 325–26 (affirming the dismissal of a tortious interference claim for failure to state a claim where there was no breach of the contract at issue); *see also Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997) ("Dismissal under Rule 12(b)(6) is proper when, taking the material allegations of the complaint as admitted, and construing them in plaintiffs' favor, the court finds that the plaintiffs have failed to allege all the material elements of their cause of action." (internal citations omitted)).

### 2. Tortious Interference with Attorney-Client Relationship

Patton Boggs's second new claim similarly asserts that Chevron and Gibson Dunn have tortiously interfered with Patton Boggs's attorney-client relationship with the Lago Agrio plaintiffs. *See* Am. Compl. ¶¶ 80–89. It is not clear, however, that "tortious interference with an attorney-client relationship" exists as a discrete tort in the District of Columbia. The only case of which the Court is aware that addresses such a claim is *Barnes v. Quigley*, 49 A.2d 467 (D.C. 1946), in which the Municipal Court of Appeals (the predecessor to the current D.C. Court of Appeals) appeared to analyze a claim of "unlawful interference into the relationship between attorney and client," *id.* at 467, as one of interference with a contract or business relationship.

*See id.* at 468. Further, Patton Boggs neither identifies any case that establishes such a claim as distinct from a normal tortious interference claim nor responds to Chevron's argument that no such cause of action exists. Accordingly, the Court concludes that such a claim is simply a type of claim for interference with a contractual or business relationship. *See* 90 A.L.R. 4th 621, § II (1991) ("Courts in many jurisdictions have [applied] to the attorney-client relationship the general rule that wrongful interference by a third person with a contractual or business relationship of another gives rise to liability in tort."). As such, it fails for the same reasons that the claim above fails.

3. **Civil Conspiracy**

Patton Boggs's final new claim is one of civil conspiracy, based on the same allegations that underpin the two tortious interference claims. This claim too must fail. In the District of Columbia, civil conspiracy is not an independent tort; thus, a claim for civil conspiracy will not lie in the absence of an underlying tortious act. *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009) (citing *Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 334 (D.C. 2007); *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000)). Because Patton Boggs's underlying claims of tortious interference fail to state plausible claims for relief, its conspiracy claim likewise falls short. Thus, none of Patton Boggs's new claims would survive a motion to dismiss under Rule 12(b)(6), and amendment of the complaint to include them would be futile. Accordingly, Patton Boggs's motion for leave to amend will be denied.[4]

---

[4] Because the Court concludes that amendment would be futile, it does not reach Chevron's additional argument that it should deny Patton Boggs's motion for leave to amend because Patton Boggs seeks to add these new claims in bad faith.

**B.     The Court Declines to Strike Chevron's Motion**

Patton Boggs next moves to strike Chevron's motion to dismiss for including factual assertions that are irrelevant or beyond the scope of the material that the Court can consider at this stage. Patton Boggs acknowledges that, on a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(3), the Court can consider facts beyond those alleged in the complaint, but asserts that Chevron's motion contains numerous factual assertions that "go well beyond the confines of the complaint and have nothing to do with the Court's subject matter jurisdiction or venue." Pl.'s Opp'n to Def.'s Mot. to Dismiss at 9. Chevron responds that Patton Boggs's request is without legal support and further that it is permissible and commonplace for a motion to provide basic background facts. The Court concludes that the motion to strike should be denied.[5]

First, as Chevron observes, it is routine for parties to provide the Court with a certain amount of background information that is not directly relevant to the merits of the claim or motion at issue. This practice ensures that the Court understands the context in which the dispute arose. *See, e.g.*, *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) (reversing a grant of a motion to strike because the allegations at issue "provide[d] important context and background to [the] suit"). Second, to the extent that the boundaries of this practice have been

---

[5] The Court assumes for the purposes of this discussion that: (1) Patton Boggs's motion to strike is made under Rule 12(f), which allows the Court to "strike from a pleading any redundant, immaterial, impertinent, or scandalous matter," FED. R. CIV. P. 12(f); (2) Patton Boggs seeks to strike Chevron's motion because the factual assertions therein are "immaterial" or "impertinent"; and (3) Rule 12(f) applies to motions, which are technically not "pleadings." *See* Fed. R. CIV. P. 12(b); BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "pleading" as "[a] formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses. In federal civil procedure, the main pleadings are the plaintiff's complaint and the defendant's answer.").

tested or exceeded here, both parties are guilty. Most of the filings in this action contain prodigious amounts of "background" information related to the Lago Agrio litigation that is largely irrelevant to either the merits of this action or the Court's jurisdiction and appears intended primarily to cast the other party in a negative light. Finally, none of the allegedly extraneous allegations in Chevron's motion to dismiss are potentially prejudicial to Patton Boggs; rather, they deal with matters that the Court simply need not consider in resolving the motion. *See Nwachukwu*, 216 F.R.D. at 178 ("[M]any courts will grant . . . motions [to strike] only if the portions sought to be stricken are prejudicial or scandalous."). For that reason, and because "[c]ourts disfavor motions to strike," *id.*, the Court will not strike the motion to dismiss. Accordingly, the Court will now turn to the merits of that motion.

### B. Chevron's Motion to Dismiss

Chevron seeks the dismissal of Patton Boggs's declaratory judgment claim on several grounds. It asserts that this dispute is not yet ripe; that this Court should use its discretion under the Declaratory Judgment Act to decline to adjudicate the propriety of Patton Boggs's participation in matters in other districts; and, similarly, that the District of Columbia is the wrong venue for the resolution of this action. Chevron's arguments are persuasive.

#### 1. Ripeness[6]

---

[6] Chevron's ripeness argument seeks the dismissal of this action under Federal Rule of Civil Procedure 12(b)(1), which authorizes a defendant to move to dismiss a complaint, or any portion thereof, for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction . . . ."). In response to such a motion, the plaintiff bears the burden of establishing federal jurisdiction. *See Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). If the plaintiff is unable to do so, the Court must dismiss the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citing *Ex parte McCardle*, 7 Wall. 506, 514 (1868)).

The ripeness doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977), and is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). The doctrine thus has two components: a constitutional bar to suits where there is no "present injury," *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999), and a prudential inquiry, which turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding resolution. *Abbott Labs.*, 387 U.S. at 149.

Here, Chevron asserts that Patton Boggs's complaint fails on both counts: Chevron argues that Patton Boggs has not identified a sufficiently concrete and specific injury, and that prudential considerations dictate dismissal. Patton Boggs responds that Chevron's November 2010 letter reserving "the right to take any action [it] deems appropriate" constituted a concrete and immediate threat to seek Patton Boggs's disqualification, and that resolution of its obligations in one forum is preferable to duplicative and piecemeal litigation. Patton Boggs's response is unavailing.

Whether Chevron's letter to Patton Boggs constitutes a credible threat of litigation sufficient to satisfy the constitutional injury requirement is a close question. *See Fed. Exp. Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 963–65 (D.C. Cir. 1995) (holding that, in the context of labor negotiations, a statement that a party would "take all appropriate action" could not be viewed as "a direct threat to file a lawsuit in the immediate future," but noting that "a different situation might be presented" if the statement had been made in "a communication from one

11

legal counsel to another"). Even if the letter is sufficient to satisfy the constitutional injury requirement, however, the letter does not support the relief that Patton Boggs requests here.

Patton Boggs seeks a declaratory judgment that "the Breaux Lott Leadership Group's prior non-legal work for Chevron does not provide a basis for disqualifying Patton Boggs from representing the Ecuadorian Plaintiffs." Compl. at 10 (prayer for relief). Despite this declaration's apparent lack of geographical limitation, Patton Boggs avers that the Court would need to apply only one body of law: "it is likely that District of Columbia rules will apply because the conduct purportedly giving rise to the conflict — [the Breaux Lott Group's] performance of lobbying work for Chevron — did not occur before a tribunal" and took place in the District. Pl.'s Opp'n at 13 n.1. This, however, is incorrect.[7]

Under the ABA's Model Rules of Professional Conduct — and thus, in a significant number of jurisdictions — the rules that govern "conduct in connection with a matter pending before a tribunal" are "the rules of the jurisdiction in which the tribunal sits." MODEL RULES OF PROF'L CONDUCT R. 8.5(b)(1); *accord* D.C. RULES OF PROF'L CONDUCT R. 8.5(b)(1); MD. LAWYER'S RULES OF PROF'L CONDUCT R. 8.5(b)(1); N.Y. RULES OF PROF'L CONDUCT R. 8.5(b)(1); PA. RULES OF PROF'L CONDUCT R. 8.5(b)(1). Thus, the propriety of Patton Boggs's participation in Chevron's various § 1782 proceedings — which is unquestionably "conduct in connection with" those proceedings — is governed by the respective rules of the jurisdictions

---

[7] The Court also notes that whether it was the Breaux Lott Group's lobbying — as opposed to Patton Boggs's subsequent appearances in litigation against Chevron — that "purportedly [gave] rise to the conflict" is a largely semantic question. In fact, it would probably be most precise to say that it was the combination of the two actions that caused the putative conflict. Regardless, the location of the lobbying activity is irrelevant to the question of which rules govern disqualifications from pending actions.

where those cases are pending. *See Southwire Co. v. Ramallo Bros. Printing, Inc.*, 2009 WL 4937726, at *15 (D.P.R. Dec. 15, 2009). Consequently, in order to determine whether "the Breaux Lott Leadership Group's prior non-legal work for Chevron . . . provide[s] a basis for disqualifying Patton Boggs from representing the Ecuadorian Plaintiffs," the Court would need to decipher and apply the law of *every* jurisdiction where Chevron *might* seek Patton Boggs's disqualification — potentially every single state.

This fact is fatal to Patton Boggs's argument that its suit is ripe. Even if Chevron's November 2010 letter constituted a credible threat of litigation for constitutional ripeness purposes, that letter could only have created a justiciable controversy *as to those actions that are currently pending* — it cannot be understood as a clear and immediate threat to seek Patton Boggs's disqualification from actions that do not yet exist. *See Laird v. Tatum*, 408 U.S. 1, 15 (1972) (ripeness requires an "actual present or immediately threatened injury"); *cf. Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 891–94 (1990) (explaining that administrative disputes are ripe for judicial intervention "only when, *and to the extent that*, a specific 'final agency action' has an actual or immediately threatened effect" (emphasis added)). Thus, as to each jurisdiction where Patton Boggs does not currently represent the Lago Agrio plaintiffs in litigation against Chevron, Patton Boggs is essentially asking for an advisory opinion regarding its ethical obligations under that jurisdiction's law — a remedy that is beyond this Court's power to provide. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937) (explaining that the federal judicial power does not extend to "advising what the law would be upon a hypothetical state of facts").[8]

---

[8] Prudential ripeness concerns do not favor Patton Boggs either; given that Patton Boggs is effectively asking the Court to conduct a fifty-state survey of its ethical obligations *vis a vis* the Lago Agrio litigation, it cannot be said that "the scope of the controversy has . . .

13

Consequently, Patton Boggs's declaratory judgment claim is, at best, only ripe as to those jurisdictions where it is involved in one of Chevron's § 1782 actions.

### 2. Abstention under the Declaratory Judgment Act

Even if some portion of Patton Boggs's suit is ripe, the Court nevertheless exercises its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, to abstain from hearing this case. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). This discretion is most often exercised when the dispute in question would be "better settled" by a court before which parallel proceedings are pending. *Cincinnati Indem. Co. v. A & K Const. Co.*, 542 F.3d 623, 625 (8th Cir. 2008) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)); *see Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010) ("[T]he classic example of when abstention is proper occurs where . . . solely declaratory relief is sought and parallel state proceedings are ongoing."); *Crown Cork & Seal Co., Inc. v. United Steelworkers*, 2004 WL 117923, at *3 (W.D. Pa. June 9, 2004) (stating that these abstention principles are "equally applicable" where the parallel case is pending in another federal court).

Here, the question of whether Patton Boggs might be subject to disqualification from any of Chevron's § 1782 proceedings would be "better settled" by the courts presiding over those cases. The necessary parties (*i.e.*, Patton Boggs and Chevron) are involved in those actions, and the presiding courts are perfectly capable of resolving Patton Boggs's ethical dilemma. *See*

---

manageable proportions." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Lujan*, 497 U.S. at 891) (internal quotation marks omitted).

*Brillhart*, 316 U.S. at 495 (abstention analysis includes "whether the claims of all parties in interest can satisfactorily be adjudicated in [the parallel] proceeding"). Indeed, as Chevron points out, whether an attorney is competent to appear in a particular proceeding is properly a question for the presiding court to resolve. *See Dyntel Corp. v. Ebner*, 120 F.3d 488, 491 (4th Cir. 1997); *cf. Airgas, Inc. v. Cravath, Swaine & Moore LLP*, 2010 WL 624955, at *4 (E.D. Pa. Feb. 22, 2010) ("To create an alternate forum for the subsidiary issue of considering the disqualification of [a law firm] would be tantamount to the proverbial tail wagging the dog."). This is doubly true when answering that question would require an application of the presiding court's own ethical rules, with which it will undoubtably be more familiar. *See Bishop v. Wood*, 426 U.S. 341, 345–46 (1976) (noting the expertise of district court judges in the law of the jurisdictions where they sit). For this Court to inform all other federal courts that Patton Boggs is qualified to represent the Lago Agrio plaintiffs before those courts would be incredibly intrusive. In fact, Patton Boggs has not identified a single case in which a court has granted relief of the type it seeks here. Accordingly, to the extent that Patton Boggs's suit is in fact ripe, the Court exercises its judgment under the Declaratory Judgment Act to dismiss the case.

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that Patton Boggs's motion to strike [#12] and motion for leave to amend [#19] must be denied and Chevron's motion to dismiss [#5] must be granted. An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.<br>
United States District Judge