PATTON BOGGS, LLP,

          Plaintiff,

          v.

CHEVRON CORPORATION,

          Defendant.

Civil Action 10-01975  (HHK)

## MEMORANDUM OPINION AND ORDER

On April 19, 2011, the Court dismissed this action, ruling that issuing a declaratory judgment regarding plaintiff Patton Boggs, LLP's ethical obligations in various other federal proceedings would be improper, and that Patton Boggs could not amend its complaint to add tort claims against defendant Chevron and its counsel, Gibson, Dunn & Crutcher, LLP. *See Patton Boggs, LLP v. Chevron Corp.*, 2011 WL 1474866 (D.D.C. Apr. 19, 2011). Before the Court is Patton Boggs's motion for reconsideration [#37], which argues that the Court erred in several respects and asks the Court to reinstate this action and allow Patton Boggs to amend its complaint to add new tort claims. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion must be denied.

## I.  BACKGROUND

In the interests of brevity, the Court will not retread all of the events that gave rise to this action, which are summarized in the Court's prior opinion and elsewhere. *See Patton Boggs*, 2011 WL 1474866, at *1–2; *Chevron Corp. v. Steven Donziger*, 2011 WL 778052, at *3–25

(S.D.N.Y. Mar. 7, 2011) (chronicling the underlying environmental dispute and litigation). In brief, Patton Boggs represents numerous parties in Ecuador ("the Lago Agrio plaintiffs") who are engaged in litigation with Chevron, both in Ecuador and in the United States. Patton Boggs owns the Breaux Lott Leadership Group, a lobbying organization that previously worked for Chevron on related issues. Patton Boggs filed this action in November 2010, seeking a declaratory judgment that its ownership of the Breaux Lott Group did not create a conflict of interest that would prevent it from representing parties adverse to Chevron. Chevron moved to dismiss Patton Boggs's claims on multiple grounds. Patton Boggs responded by moving to strike Chevron's motion to dismiss and seeking leave to amend its complaint to add claims of tortious interference against Chevron and Gibson Dunn.

On April 19, 2011, the Court issued a memorandum opinion and a judgment dismissing the case in its entirety. The Court first denied Patton Boggs's motion for leave to amend its complaint, explaining that because Patton Boggs did not allege any facts suggesting that Chevron and Gibson Dunn's conduct had caused an actual breach of Patton Boggs's contract with the Ecuadorian plaintiffs, it had failed to state a claim of tortious interference under District of Columbia law. *See Patton Boggs*, 2011 WL 1474866, at *2–4. The Court assumed that District law applied because both parties did so, and "courts need not address choice of law questions *sua sponte.*" *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir. 1991).[1]

---

[1] The Court also rejected a claim for tortious interference with an attorney-client relationship (finding no indication that such a cause of action exists under District law) and a civil conspiracy claim (which cannot lie absent a viable underlying tort claim). *See Patton Boggs*, 2011 WL 1474866, at *4.

The Court then granted Chevron's motion to dismiss Patton Boggs's declaratory judgment claim.[2] The Court concluded that Patton Boggs's requested remedy — a declaratory judgment that "the Breaux Lott Leadership Group's prior non-legal work for Chevron does not provide a basis for disqualifying Patton Boggs from representing the Ecuadorian Plaintiffs," Compl. at 10 (prayer for relief) — went well beyond any justiciable controversy created by Chevron's alleged threat to seek Patton Boggs's disqualification from the actions that Chevron had initiated under 28 U.S.C. § 1782 (which authorizes district courts to issue orders permitting discovery for use in foreign proceedings). *See Patton Boggs*, 2011 WL 1474866, at *5–6. Further, the Court concluded that, insofar as the action was ripe for adjudication, abstention under the Declaratory Judgment Act was appropriate, because the question of Patton Boggs's ability to appear in Chevron's various collateral proceedings was one better settled by the courts presiding over those cases. *See Patton Boggs*, 2011 WL 1474866, at *7. The Court noted that for it "to inform all other federal courts that Patton Boggs is qualified to represent the Lago Agrio plaintiffs before those courts would be incredibly intrusive." *Id.*

On April 27, 2011, Patton Boggs moved for reconsideration of the Court's decision to dismiss the case, and sought leave to amend its complaint to add new claims. Simultaneously, it filed a new action in this Court, apparently presenting claims identical to those that it seeks permission to reinstate or add here. *See Patton Boggs, LLP v. Chevron Corp.*, No. 11-0799 (D.D.C. filed Apr. 27, 2011).

---

[2] The Court denied Patton Boggs's motion to strike Chevron's motion to dismiss because it found no material therein sufficiently prejudicial or scandalous to warrant striking the motion. *See Patton Boggs*, 2011 WL 1474866, at *4–5.

## II.  LEGAL STANDARD

Patton Boggs suggests that the Court treat its motion for reconsideration as being made under Federal Rule of Civil Procedure 60(b), which allows the Court to "relieve a party . . . from a final judgment, order, or proceeding" for certain reasons. FED. R. CIV. P. 60(b).  Patton Boggs acknowledges, however, that the Court might conclude that Rule 59(e), which allows a party to file a motion "to alter or amend a judgment" within 28 days thereof, FED. R. CIV. P. 59(e), supplies the appropriate standard. *See* Pl.'s Mem. in Supp. of Mot. for Recons. ("Pl.'s Mem.") at 1.  Because Patton Boggs's motion for reconsideration "calls into question the correctness of [the Court's] judgment" and was filed within Rule 59(e)'s time limit, the Court construes it as being made pursuant to that provision. *See MLC Automotive, LLC v. Town of Southern Pines*, 532 F.3d 269, 277 (4th Cir. 2008); *Johnson v. Penn Camera Exch.*, 583 F. Supp. 2d 81, 84–85 (D.D.C. 2008); *Turner v. Dep't of Interior*, 2007 WL 2982722, at *1 (D.D.C. Oct. 12, 2007) (citing *Derrington-Bey v. D.C. Dep't of Corr.*, 39 F.3d 1224, 1225–27 (D.C. Cir. 1994)).  Thus, Patton Boggs's motion "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)) (internal quotation marks omitted).  Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996); *accord Carter v. Wash. Metro. Area Transit Auth.*, 503 F.3d 143, 145 n.2 (D.C. Cir. 2007).

## III.  ANALYSIS

**A.      Abstention under the Declaratory Judgment Act**

Patton Boggs first contends that the Court erred by declining to issue a declaratory judgment resolving its ethical obligations vis-à-vis Chevron and the Lago Agrio litigation.  It argues that the Court appeared to overlook two salient facts: first, that any court deciding whether a conflict precludes Patton Boggs from appearing opposite Chevron would turn on a threshold question of District of Columbia law, which this Court is ideally suited to resolve; and second, that one of Chevron's § 1782 actions is proceeding in this district.  These arguments are unpersuasive.

In granting Chevron's motion to dismiss, the Court explained that because the declaratory judgment sought by Patton Boggs — that it could represent the Lago Agrio plaintiffs — was without geographical or jurisdictional limitation, Patton Boggs was effectively asking the Court "to decipher and apply the law of *every* jurisdiction where Chevron *might* seek Patton Boggs's disqualification."  *See Patton Boggs*, 2011 WL 1474866, at *6.  In so concluding, the Court rejected Patton Boggs's argument that, because the Breaux Lott Group's lobbying for Chevron took place in the District, District law would govern any disqualification motion based on a putative conflict caused by that lobbying activity.  *See id.*

Patton Boggs now contends that the Court erred by overlooking the "fact" that a court in another jurisdiction, before applying its own ethical rules, would have to determine whether the Breaux Lott Group's lobbying services for Chevron were legal in nature, a question that, Patton Boggs avers, is governed by District of Columbia law.  *See* Pl.'s Mem. at 3.  To begin with, this argument — like Patton Boggs's original contention that District law would govern any

5

disqualification motion based on the Breaux Lott Group's lobbying — is wholly unsupported. Indeed, this assertion appears directly contrary to the Court's prior holding that "the propriety of Patton Boggs's participation in Chevron's various § 1782 proceedings . . . is governed by the respective rules of the jurisdictions where those cases are pending." *Patton Boggs*, 2011 WL 1474866, at *6.[3] But more importantly, this proposition — even if true — is simply irrelevant to the Court's bottom-line determination that it would overreach by adjudicating the propriety of Patton Boggs's appearance before other courts. Even if District law would "inform the disqualification analysis" under other courts' rules of conduct, Pl.'s Mem. at 4, those courts remain better suited to undertake that analysis. *Patton Boggs*, 2011 WL 1474866, at *7.

The same is true of Patton Boggs's second point: that Judge Kollar-Kotelly of this district is currently presiding over one of Chevron's § 1782 actions, in which Patton Boggs has appeared as counsel. *See In re Application of Chevron Corp.*, Misc. No. 11-0030 (D.D.C. filed Jan. 21, 2011) (Kollar-Kotelly, J.). Judge Kollar-Kotelly, no less than a judge sitting in another judicial district, is "perfectly capable of resolving Patton Boggs's ethical dilemma." *Patton Boggs*, 2011 WL 1474866, at *7. The fact that she sits in the same courthouse does not change the fact that "creat[ing] an alternate forum for the subsidiary issue of considering the disqualification of [a

---

[3]     For example, in New York, where Chevron filed one of its § 1782 proceedings, *see In re Chevron Corp.*, 709 F. Supp. 2d 283 (S.D.N.Y. 2010), "a party seeking disqualification of its adversary's lawyer [on the basis of a prior-client conflict] must prove," inter alia, "the existence of a prior attorney-client relationship between the moving party and opposing counsel." *Tekni-Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 131 (N.Y. 1996). Patton Boggs offers no authority to support the dubious proposition that a New York federal court, applying New York's Rules of Professional Conduct, must answer *this* question under District law, but adjudicate the remaining two disqualification elements — that the matters involved in both representations are substantially related, and that the interests of the present client and former client are materially adverse, *id.* — under New York law.

6

law firm] would be tantamount to the proverbial tail wagging the dog." *Id.* (quoting *Airgas, Inc. v. Cravath, Swaine & Moore LLP*, 2010 WL 624955, at *4 (E.D. Pa. Feb. 22, 2010)) (internal quotation marks omitted) (second alteration in original). Nor, of course, could the presence of *one* of Chevron's collateral actions in this district justify a ruling by this Court on Patton Boggs's ability to appear in *all* of them.[4] In short, Patton Boggs has failed to demonstrate that the Court's abstention under the Declaratory Judgement Act — which was, after all, discretionary, *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) — was improper.

**B.    Denial of Leave to Add Claims of Tortious Interference and Civil Conspiracy**

Patton Boggs next argues that the Court erred in denying Patton Boggs leave to amend its complaint to add claims of tortious interference and civil conspiracy against Chevron and Gibson Dunn. Patton Boggs asserts that, in holding that adding these claims would be futile because they could not survive a motion to dismiss for failure to state a claim, the Court may have applied the wrong jurisdiction's law, and definitely applied the wrong theory of tortious interference. The Court addresses each argument in turn.

---

[4]    Patton Boggs suggests that the Court may have wrongly assumed that Patton Boggs has appeared in all of Chevron's § 1782 actions, rather than just six. Pl.'s Mem. at 4 n.3. This distinction is irrelevant because Patton Boggs's requested declaratory judgment was not limited to those actions in which it had already appeared. Patton Boggs requested, without qualification, a declaration that "the Breaux Lott Leadership Group's prior non-legal work for Chevron does not provide a basis for disqualifying Patton Boggs *from representing the Ecuadorian Plaintiffs*." Compl. at 10 (prayer for relief) (emphasis added). As the Court has already explained, this request *by its terms* reaches any and all litigation, in any forum, where Patton Boggs *might* appear on behalf of the Lago Agrio plaintiffs. *Patton Boggs*, 2011 WL 1474866, at *6. And, as the Court made clear, that fact also poses constitutional ripeness problems for Patton Boggs's requested relief, *see id.*, an issue that Patton Boggs's motion for reconsideration entirely fails to address.

1.      **Choice of Law**

Patton Boggs's proposed amended complaint did not specify the body of law under which

Patton Boggs sought to bring its tortious interference and civil conspiracy claims.[5]  Chevron, in

opposing the addition of Patton Boggs's tort claims, assumed that those claims would be

governed by District of Columbia law.  *See* Def.'s Opp'n to Pl.'s Mot. for Leave to Amend [#22]

at 20–21.  In its reply brief, Patton Boggs did the same.  *See* Pl.'s Reply in Supp. of Pl.'s Mot. for

Leave to Amend [#23] at 17–19.  In light of both parties' unquestioning reliance on District law,

the Court concluded that it need not raise the choice-of-law issue *sua sponte*, and analyzed Patton

Boggs's tort claims under District law.  *Patton Boggs*, 2011 WL 1474866, at *2–4.

Patton Boggs now suggests that, by "citing to law within the District of Columbia to

counter Chevron's arguments," it "did not intend to concede that District of Columbia law would

apply."  Pl.'s Mem. at 6.  In fact, Patton Boggs now avers, New Jersey law "may well" govern,

because New Jersey is where Patton Boggs performs the services with which Chevron and

Gibson Dunn have allegedly interfered.  But the time for this argument has passed.  A motion for

reconsideration "is not an appropriate forum for . . . arguing matters that could have been heard

during the pendency of the previous motion."  *Carter*, 503 F.3d at 145 n.2 (quoting *Caisse*

*Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996)) (internal

quotation marks omitted); *see also Kattan ex rel. Thomas v. District of Columbia*, 995 F.2d 274,

276 (D.C. Cir. 1993) ("[A] losing party may not use a Rule 59 motion to raise new issues that

---

[5]      Nor was it required to — "[c]omplaints 'need not plead law or match facts to
every element of a legal theory.'"  *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000)
(quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)).

could have been raised previously.").  Patton Boggs had ample opportunity to argue that New Jersey law governed its tort claims; it did not.  It may not do so now.[6]

## 2.    The Applicable Theory of Tortious Interference

Patton Boggs next contends that, even under District of Columbia law, the Court erred by holding that Patton Boggs's tortious interference claim was deficient because it failed to allege an actual breach of Patton Boggs's contract with the Lago Agrio plaintiffs.  Pl.'s Mem. at 5.  Patton Boggs points out that the Court relied on a formulation of tortious interference that involves the defendant inducing a third party to breach a contract with the plaintiff.  *See Patton Boggs*, 2011 WL 1474866, at *3 (citing *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 325–26 (D.C. 2008)).  This formulation, employed by the District's courts, stems from § 766 of the Second Restatement of Torts.  *See Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 290 (D.C. 1989) (citing RESTATEMENT (SECOND) OF TORTS § 766 (1979)).  Patton Boggs, however, avers that its complaint states a claim for relief under a different formulation of tortious interference, as codified in § 766A of the Restatement:

> One who intentionally and improperly interferes with the performance of a contract . . . between [the plaintiff] and a third person, by preventing the [plaintiff] from performing the contract *or causing his performance to be more expensive or burdensome*, is subject to liability to the [plaintiff] for the pecuniary loss resulting to him.

---

[6]     *Turkmani v. Republic of Bolivia*, 273 F. Supp. 2d 45 (D.D.C. 2002), is not to the contrary.  Although the *Turkmani* court exercised its discretion to address a choice-of-law issue raised first in a motion for reconsideration, it acknowledged that it "would be justified in denying" that portion of the motion because such motions are not vehicles for presenting theories or arguments that could have been advanced earlier.  *Id*. at 52.

RESTATEMENT (SECOND) OF TORTS § 766A (emphasis added). Patton Boggs asserts that it has stated a claim for relief under *this* formulation of tortious interference, which does not require an actual breach of contract.[7] Patton Boggs is incorrect.

The first problem here is that Patton Boggs had ample opportunity to present this argument in support of its motion for leave to amend, and failed to do so. In fact, Patton Boggs's own reply brief laid out the precise formulation of tortious interference that it now argues the Court erred by employing. *See* Pl.'s Reply in Supp. of Mot. for Leave to Amend at 12 ("Under D.C. law, tortious interference with contract has four elements: '(1) existence of a contract, (2) knowledge of the contract, (3) *intentional procurement of its breach by the defendant*, and (4) damages resulting from the breach.'" (quoting *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1305 (D.C. Cir. 2002)) (internal quotation marks omitted) (emphasis added)). Indeed, Patton Boggs's response to Chevron's argument that allegations of breach were required was not to assert the contrary, but rather to argue that it had alleged that Chevron and Gibson Dunn were attempting to cause a breach, which was sufficient. At no time did Patton Boggs mention the form of tortious interference contained in § 766A.

Second, it is not wholly clear that § 766A's cause of action is viable in the District. *DeKine v. District of Columbia*, 422 A.2d 981 (D.C. 1980), the only case in which a D.C. court has even cited § 766A, did not, as Patton Boggs contends, "adopt" that provision. *See* Pl.'s Mem. at 6. The question before the *DeKine* court was when the plaintiffs' cause of action

---

[7]  The Third Circuit recently explained the difference between the two causes of action as follows: "§ 766 allows a plaintiff to recover if a third party fails entirely to perform . . . , while § 766A allows the plaintiff to recover if he himself was forced either to fail to perform under a contract or to perform under more expensive or burdensome circumstances . . . ." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 834 (3d Cir. 2011).

accrued for the purposes of a statute requiring notice to the District's Mayor of tort claims against the District within a certain time after the underlying injury. *See id.* at 983, 988. In resolving that question, the court stated broadly that damage is an essential element of tort claims "that fall under the general rubric of 'interference with contractual relations.'" *Id.* at 988 (quoting W. PROSSER, THE LAW OF TORTS §§ 129–130 (4th ed. 1971)). The *DeKine* court had no occasion to "adopt" the specific cause of action championed by Patton Boggs here.[8] And the only federal decision to apply § 766A under D.C. law involved a breach of contract; thus, it did not consider whether a plaintiff can sue a third party for impeding the plaintiff's performance where no breach has occurred. *See Park v. Hyatt Corp.*, 436 F. Supp. 2d 60, 64–65 (D.D.C. 2006).[9]

But the uncertain status of § 766A need not detain the Court here. Even if Patton Boggs's argument were not untimely, and even if the Court were to apply § 766A precisely as written, Patton Boggs's proposed amended complaint would *still* fail to state a claim for tortious interference. As noted above, damages are an essential element of any tortious interference claim. *DeKine*, 422 A.2d at 988. Section 766A itself states that it creates liability for "pecuniary loss." RESTATEMENT (SECOND) OF TORTS § 766A. But Patton Boggs's proposed amended complaint identified no such loss resulting from defendants' conduct. Patton Boggs alleged that

---

[8]      In fact, the *DeKine* court did not even cite § 766A itself; it cited comment i thereto, which is simply a cross-reference to comments to § 766 that deal with damages and remedies. *See* RESTATEMENT (SECOND) OF TORTS § 766 cmts. t, u; *id.* § 766A cmt. i.

[9]      It is not a foregone conclusion that the District's courts would, if they recognized § 766A, allow suits where the plaintiff's performance had been made more burdensome or expensive, but where no breach had occurred; they do not allow such claims in traditional, third-party tortious-interference cases, even though other jurisdictions do. *See Murray*, 953 A.2d at 326 ("Unlike in some jurisdictions, courts in the District of Columbia have held that 'a breach of contract is an essential element' of the tort [of tortious interference with a contract]." (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1266 (D.C. Cir. 1995)).

Chevron and Gibson Dunn were "*seeking to* sully Patton Boggs' reputation," Am. Compl. ¶ 54 (emphasis added), but it did not allege that they had succeeded, let alone that "pecuniary loss" resulted. Patton Boggs also alleged, in conclusory fashion, that it and its relationship with the Lago Agrio plaintiffs had suffered irreparable injury, Am. Compl. ¶¶ 78, 88, but did not explain how, or identify any resulting pecuniary harm. To state a cognizable claim for relief, a complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, —U.S.—, 129 S. Ct. 1937, 1949 (2009). Even under § 766A, Patton Boggs's proposed amended complaint did not do so.

Simply put, Patton Boggs's argument is a day late and a dollar short. Patton Boggs failed to make this argument while its motion for leave to amend was pending; it now fails to provide adequate support for the contention that its preferred formulation of tortious interference is employed by the District's courts; and its proposed amended complaint fails to state a claim thereunder anyway. No "clear error or manifest injustice" occurred here. *Anyanwutaku*, 151 F.3d at 1057.

## C.     Patton Boggs's Request for Leave to Amend

In addition to challenging the Court's dismissal of this action, Patton Boggs seeks to add an additional claim of tortious interference based on the traditional formulation employed in § 766 of the Restatement. But, while Patton Boggs is correct that leave to amend should be "freely given when justice so requires," FED. R. CIV. P. 15(a), a party seeking to add new claims under Rule 15 after a judgment dismissing the underlying action "must first satisfy Rule 59(e)'s more stringent standard." *Firestone*, 76 F.3d at 1208. As described above, Patton Boggs has failed to do so. Accordingly, this action remains terminated and the Court will not consider

Patton Boggs's request for leave to amend under Rule 15(a). *See id.* (denial of leave to amend in such a case cannot be an abuse of discretion unless District court "abused its discretion in failing to vacate the original dismissal").

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Patton Boggs has failed to establish the "clear error or manifest injustice" that is required to justify the relief it seeks. *See Anyanwutaku*, 151 F.3d at 1057. The Court will not at this time address the fact that Patton Boggs has taken the unusual step of filing, along with its motion for reconsideration, a new complaint in a separate action presenting the same claims that were dismissed in this case, along with another tortious interference claim. *See Patton Boggs*, No. 11-0799. Although Chevron suggests that the Court would be within its power to dismiss that case *sua sponte*, *see* Def.'s Opp'n to Pl.'s Mot. for Recons. at 1. n.1, the Court believes that the proper course is to give full consideration to the arguments made by the parties regarding Chevron's pending motion to dismiss that action.

Accordingly, it is this 8th day of July 2011 hereby

**ORDERED** that plaintiff's motion for reconsideration and for leave to file a second amended complaint [#37] is **DENIED**.

Henry H. Kennedy, Jr.
United States District Judge